LAW OFFICES OF GABRIEL S. DE LA MERCED
Gabriel S. De La Merced (GD5047)
30 Vesey Street, Suite 901
New York, NY 10007
Tel. No. 212-791-7621
Fax No. 212-791-7625

LAW OFFICE OF FELIX Q. VINLUAN
Felix Q. Vinluan (FV6788)
450 Seventh Avenue, Suite 931
New York, NY 10123
Tel. No. 212-643-2692
Fax No. 212-643-3494
*Attorneys for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

CONCHITA UY,
*Plaintiff,*

- against -

THE MOUNT SINAI HOSPITAL (aka MOUNT SINAI MEDICAL CENTER) and JEFF COHEN,
*Defendants.*

-------------------------------------------------------------------X

**Docket No. 10-cv-5674**
(RJH) (JLC)
ECF Case

**AMENDED COMPLAINT**
Plaintiff Demands a Trial by Jury

**Plaintiff** Conchita Uy ("Plaintiff"), by and through undersigned counsel, hereby submits pursuant to the Scheduling Order dated October 7, 2010 this Amended Complaint against the Defendants, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to remedy employment discrimination and hostile work environment on the basis of her age, and for retaliation for engaging in protected activity during the course of her employment. This suit is brought to secure the protection of, and to redress the deprivation of rights secured by the Age Discrimination in Employment Act (29 U.S.C. §§ 621-634), the New York State Human Rights Law (Exec. Law §§ 290 to 297), the New York City Human Rights Law (N.Y. City Admin. Code §§ 8-101 to 131), and the common laws of the state of New York.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. 2000e-5 (f) (3), 28 U.S.C. 1331, and 28 U.S.C. 1343 (a) (1) (4), and supplemental jurisdiction for common law violations pursuant to 28 U.S.C. 1367, as the common law claim forms part of the same case or controversy.

3. Venue is proper in this District under 28 U.S.C. 1391 (b) and 42 U.S.C. 2000e-5 (f) (3) because the Defendants conduct business in the state of New York and engaged in and/or ratified, in the state of New York, the illegal conduct which adversely affected the Plaintiff.

4. Pursuant to §8-502 (c) of the City Law, prior to filing this Amended Complaint, Plaintiff served a copy of the Amended Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

## ADMINISTRATIVE REQUIREMENT

5. Plaintiff filed a timely charge of age discrimination and retaliation with the United States Equal Employment Opportunity Commission (EEOC) on or about April 6, 2009.

6. Since Plaintiff's filing of the age discrimination and retaliation charges against Mount Sinai Hospital with the EEOC, sixty days or more have elapsed. Therefore, pursuant to 29 U.S.C. 626 (d) (1), all administrative prerequisites have been satisfied.

**THE PARTIES**

7. Plaintiff is a legal permanent resident of the United States of America and resides in Queens County, New York. She is a 64 year-old female, having been born on August 18, 1946 in the Philippines, and is of Chinese ancestry/ethnicity.

8. Plaintiff is a clinical laboratory technologist by profession, and has worked as a laboratory or medical technologist for over 30 years prior to her being employed by The Mount Sinai Hospital.

9. Plaintiff was hired by The Mount Sinai Hospital as a clinical laboratory technologist in its New York City (Manhattan) hospital offices on November 8, 2005.

10. At all times relevant to this action, The Mount Sinai Hospital (hereinafter, "Hospital") was a domestic not-for-profit corporation created pursuant to the laws of the state of New York and doing business in the state of New York. It is located at One Gustave L. Levy Place, New York, NY 10029.

11. Defendant Jeff Cohen (hereinafter, "Cohen") is, at all times relevant, the Hospital's Vice President for Labor Relations. Upon information and belief, he resides in the state of New York.

12. All of the acts alleged in this Complaint were authorized, ordered, and implemented by the Hospital's officers, agents, and/or representatives while actively engaged in the management of the Hospital's business.

## FACTUAL ALLEGATIONS

13. The Hospital's Hematology Department chief supervisor, Ms. Mayra Lema, interviewed and hired the Plaintiff as a full-time laboratory technologist on November 8, 2005.

14. At the time of Plaintiff's hire, the Education Law of the State of New York required licensure or certification for laboratory technologists by September 1, 2006. A special provision granted licensure to laboratory technologists who have been performing such duties for five years prior to September 1, 2006, if their employment is verified by their laboratory directors. The only requirement for the "5-year" practitioners was that they should apply for a license by September 1, 2008.

15. Upon hire, Plaintiff was assigned to work during the evening/night shifts whereby her immediate supervisor was a certain Glenn Estavillo (hereinafter, "Estavillo"), male, early 50s in age, and like the Plaintiff, was born in the Philippines.

16. As early as during the first few months of her employment with the Hospital, Plaintiff suffered a pattern of discriminatory behavior from her immediate supervisor that was characterized by insulting remarks about her being old, slow and erratic.

17. Upon information and belief, Estavillo did not approve of Plaintiff's having been hired by the Hospital because of the latter's old age. He even told Ms.

Mayra Lema that it would be a waste of time to train the Plaintiff because of her age, and that Plaintiff would be retiring anyway in two to three years.

18. Estavillo constantly harassed Plaintiff with verbal abuse and insults by emphasizing on Plaintiff's old age and seeming lack of professional competence or know-how.

19. Estavillo exhibited disparate treatment against Plaintiff on account of the latter's old age. He did not approve the payment of Plaintiff's overtime hours but approved those of younger technologists'.

20. Estavillo and another shift supervisor, Apolinario Mendejar, regularly disregarded or covered up egregious mistakes by junior technologists, but intensely castigated Plaintiff for every mistake they thought Plaintiff had committed.

21. Junior technologists were allowed to carry on jokes and non-job related conversations with Estavillo and Mendejar. They were allowed to enter the supervisor's offices and to access the Internet to view You Tube, but Plaintiff was expressly prohibited from doing the same.

22. Sometime late 2007, Estavillo became furious at the Plaintiff because somebody had lied to him about Plaintiff's allegedly having reported him to Ms. Mayra Lema that he would not pay Plaintiff's sick time.

23. Estavillo confronted Plaintiff who denied having made the report. Nonetheless, Estavillo kept on arguing and even shouted behind Plaintiff's back the Pilipino words "Kahit matanda ka, hindi kita ginagalang" (English translation: "Even though you are old, I do not respect you.")

24. Upon information and belief, Estavillo did not want to work with and supervise older employees such as the Plaintiff. He used all avenues to have Plaintiff terminated.

25. On May 22, 2008, Plaintiff went on a disability leave as she was suffering from a lot of pain caused by her constant lifting and pushing of heavy boxes of reagents and solutions at her worksite.

26. While Plaintiff was on leave, Estavillo, upon information and belief, convinced the Hematology Coagulation Director (Dr. Ellinor Peerschke) to terminate Plaintiff on June 2, 2008 on the ground of insubordination, because Plaintiff allegedly had not applied for and had not submitted her laboratory technologist license.

27. Plaintiff contested her termination as she had in fact timely applied for licensure under the grandparenting provisions of the New York State Education Law Article 165.

27.1 On October 3, 2006, the State Education Department, Division of Professional Licensing Services, had issued Plaintiff a letter permitting her to continue working as a laboratory clinical technologist pending a final action taken on her application.

27.2 The deadline for submission of the licensure application and the fees was on September 1, 2007.

27.3 The deadline for securing a license for laboratory technologists was extended from September 1, 2008 to January 1, 2009.

28. Plaintiff's license to practice laboratory technology was released by the State Education Department on June 30, 2008.

29. After Plaintiff submitted her license, Ms. Mayra Lema instructed the coordinator to enter Plaintiff's employment application on line through the Mount Sinai Internet. The Hospital eventually re-hired Plaintiff's services on August 11, 2008.

30. Upon information and belief, there were at least two much younger and less experienced laboratory technologists who were not able to secure their licenses but were not terminated at all.

31. On November 17, 2008, Plaintiff took another disability leave.

32. While she was on disability leave on December 18, 2008, Plaintiff was again terminated, for alleged insubordination and failure to submit a doctor's note of her return-to-work date.

33. Upon information and belief, Plaintiff's immediate supervisor, Estavillo, had a hand in bringing up Plaintiff's alleged failure to submit a return-to-work date, and caused her termination.

34. Plaintiff contested her second termination. During the third step grievance hearing, it was decided that the Hospital would reinstate Plaintiff to work on March 3, 2009.

35. To resolve Estavillo's dislike of the Plaintiff because of the latter's age, the union representative requested that Plaintiff should be transferred to the day shift.

36. The Hospital's Laboratory Administrator, Ms. Toni Mailly, turned down the union representative's request as there was allegedly no opening on the day shift.

37. Upon information and belief, there were several openings on the day shift. In fact, Ms. Mailly hired several young employees from her previous employment to

work on the day shift. She also hired a young technologist without a New York license to be the day shift coordinator.

38. Not long after she was reinstated, Plaintiff, on March 12, 2009, applied for another disability leave as she had injured her leg at work and had suffered severe and extreme pain on her body.

39. On or about March 15, 2009, Plaintiff sent Defendant Cohen, the Hospital's Vice President for Labor Relations, a formal complaint against Hematology supervisors Estavillo and Mendejar for age discrimination and harassment, among others.

40. Defendant Cohen did not bother to reply to Plaintiff's complaint.

41. On or about April 6, 2009, Plaintiff filed her age discrimination, disability and retaliation charges against the Hospital before the Equal Employment Opportunity Commission (EEOC).

42. On or about May 22, 2009, the EEOC notified the Hospital about Plaintiff's age discrimination, disability and retaliation charges. The Hospital was required to provide a position statement by June 19, 2009.

43. Upon information and belief, Defendant Cohen instructed Ms. Mayra Lema to terminate Plaintiff's services on June 22, 2009, on the ground that Plaintiff had allegedly made a false statement on her 2005 job application.

44. Plaintiff contested her third termination.

44.1 She argued that at the time she applied in 2005, the ground for her termination from her previous employment was being grieved at the former employer, and that it had not been decided yet. Thus, she submitted in good faith her job application without expressly stating that she had been terminated.

44.2 Plaintiff likewise argued that when she applied for her New York grandparenting licensure in 2006, she had informed Hospital supervisors, including Ms. Mayra Lema, about the circumstances of her termination from her previous employment. Plaintiff's license could not be immediately issued because of a "good moral" investigation being conducted in connection with her previous employment. Ms. Lema, nonetheless, executed a supporting recommendatory letter dated May 19, 2008 for the issuance of Plaintiff's license.

44.3 The Hospital had known about Plaintiff's retaliatory termination by her previous employer and yet re-hired her on August 11, 2008.

45. During the third step grievance hearing on August 12, 2009, the union representative asked that Plaintiff's June 22, 2009 termination be changed to early retirement. Defendant Cohen denied the request, but expressly stated that he would agree to Plaintiff's early retirement if Plaintiff would retract her EEOC charges against the Hospital.

46. Plaintiff's age was the but-for cause of Defendants' decision to terminate her services. The other reason given -- that Plaintiff had allegedly made false statement on her 2005 job application – was a pretextual response to Plaintiff's complaints that Defendants were violating the law.

47. On July 26, 2010, Plaintiff filed the instant Complaint *pro se*.

## FIRST CAUSE OF ACTION

### Age Discrimination - ADEA

48. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 47 of this Amended Complaint as though fully set forth herein.

49. The Defendants discriminated against the Plaintiff with respect to the termination of her employment on the basis of her age, over 40, in violation of the ADEA.

50. The Defendants' conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiff.

51. The Defendants' policies and practices resulted in the Plaintiff being subject to disparate treatment, hostile work environment, harassment and retaliation.

52. By reason of the Defendants' discrimination, the Plaintiff suffered severe harm, is now suffering and will continue to suffer irreparable injury, and is entitled to all legal and equitable remedies available under the ADEA, including but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, compensatory damages for her non-economic injuries, liquidated damages, reasonable counsel fees and costs.

**<u>SECOND CAUSE OF ACTION</u>**

**Retaliation - ADEA**

53. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 52 of this Amended Complaint as though set forth herein.

54. By the acts and practices described above, Defendants retaliated against Plaintiff for the exercise of her rights under the ADEA.

55. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's protected rights.

56. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her

reputation as a result of Defendants' retaliatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

### Age Discrimination - NYSHRL

57. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 56 of this Amended Complaint as though fully set forth herein.

58. The Defendants discriminated against the Plaintiff with respect to the termination of her employment on the basis of her age, over 40, in violation of the NYSHRL.

59. The Defendants' conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiff.

60. The Defendants' policies and practices resulted in the Plaintiff being subject to disparate treatment, hostile work environment, harassment and retaliation.

61. By reason of the Defendants' discrimination, the Plaintiff suffered severe harm, is now suffering and will continue to suffer irreparable injury, and is entitled to all legal and equitable remedies available under the NYSHRL, including but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, compensatory damages for her non-economic injuries, liquidated damages, reasonable counsel fees and costs.

## FOURTH CAUSE OF ACTION

### Retaliation - NYSHRL

62. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 61 of this Amended Complaint as though set forth herein.

63. By the acts and practices described above, Defendants retaliated against Plaintiff for the exercise of her rights under the NYSHRL.

64. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's protected rights.

65. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of Defendants' retaliatory practices unless and until this Court grants relief.

**FIFTH CAUSE OF ACTION**

**Age Discrimination - NYCHRL**

66. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 65 of this Amended Complaint as though fully set forth herein.

67. The Defendants discriminated against the Plaintiff with respect to the termination of her employment on the basis of her age, over 40, in violation of the NYCHRL.

68. The Defendants' conduct was intentional, deliberate, willful, and conducted in callous disregard of the rights of the Plaintiff.

69. The Defendants' policies and practices resulted in the Plaintiff being subject to disparate treatment, hostile work environment, harassment and retaliation.

70. By reason of the Defendants' discrimination, the Plaintiff suffered severe harm, is now suffering and will continue to suffer irreparable injury, and is entitled to all legal and equitable remedies available under the NYCHRL, including but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, compensatory

damages for her non-economic injuries, liquidated damages, reasonable counsel fees and costs.

**SIXTH CAUSE OF ACTION**

**Retaliation - NYCHRL**

71. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 70 of this Amended Complaint as though set forth herein.

72. By the acts and practices described above, Defendants retaliated against Plaintiff for the exercise of her rights under the NYCHRL.

73. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's protected rights.

74. Plaintiff has suffered, is now suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish and humiliation, and damage to her reputation as a result of Defendants' retaliatory practices unless and until this Court grants relief.

**SEVENTH CAUSE OF ACTION**

**Retaliatory Discharge**

75. Plaintiff repeats and re-alleges each allegation contained in paragraphs 1 through 74 of this Amended Complaint as though set forth herein.

76. By the acts and practices described above, Defendants terminated the services of the Plaintiff in retaliation for Plaintiff's exercise of her rights under the law.

77. Defendant Cohen is a corporate officer of Defendant Hospital who exercised managerial responsibilities and substantial control over Plaintiff's employment.

78. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

79. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, as well as physical injury, for which she is entitled to an award of monetary damages and other relief.

80. As a result of her retaliatory discharge by Defendants, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial, but which amount is believed to exceed Five Hundred Thousand dollars ($500,000.00).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, the State of New York, the City of New York and common law;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' retaliatory discharge and otherwise unlawful conduct, as well as to take such affirmative action as is necessary

to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect her employment and personal life;

D. An award of damages in an amount to be determined at trial, but which is believed to exceed five hundred thousand dollars, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, seniority and other benefits of employment;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

F. An award of liquidated damages under the ADEA, in an amount double the amount of lost back and front pay;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law, and;

H. Such other legal and equitable relief or may be just and proper under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, New York, October 21, 2010.

Yours, etc.

LAW OFFICES OF GABRIEL S. DE LA MERCED

By: s/s Gabriel De La Merced (GD5047

30 Vesey Street, Suite 901
New York, NY 10007
Tel. No. 212-791-7621
Fax No. 212-791-7625
Email: gdelamerce@yahoo.com

LAW OFFICE OF FELIX Q. VINLUAN

By: /s/ Felix Q. Vinluan (FV6788)

450 Seventh Avenue, Suite 931
New York, NY 10123
Tel. No. 212-643-2692
Fax No. 212-643-3494
Email: fqvinluan@yahoo.com

Attorneys for the Plaintiff

**VERIFICATION**

**STATE OF NEW YORK )**
**CITY OF NEW YORK ) S.S.**

**I, CONCHITA UY,** of legal age and a resident of the state of New York, after having been sworn in accordance with law, hereby state that I am the plaintiff in the within Amended Complaint. I have read the foregoing amended complaint and know the contents thereof. The contents are true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

/s/ **CONCHITA UY**

Subscribed to before me this 21st day of October 2010 in New York, New York.

/s/ Felix Q. Vinluan, Esq.
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission expires on 06-20-2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

CONCHITA UY,

*Plaintiff,*

- against -

THE MOUNT SINAI HOSPITAL (aka MOUNT SINAI MEDICAL CENTER) and JEFF COHEN,

*Defendants.*

---------------------------------------------------------------X

**Docket No. 10-cv-5674**
(RJH) (JLC)
ECF Case

**AFFIDAVIT OF SERVICE**

GABRIEL S. DE LA MERCED, being duly sworn, deposes and says that he is over the age of eighteen; is not a party to this action; and that on the 21st day of October 2010, he caused a true and correct copy of the foregoing AMENDED COMPLAINT to be served upon:

Rory J. McEvoy, Esq.
Julie L. Sauer, Esq.
Edwards Angeli Palmer & Dodge LLP
Attorneys for the Defendants
750 Lexington Avenue
New York, NY 10022

by depositing a true copy of said document enclosed in prepaid, sealed wrapper, properly addressed to the above-named party, in an official depository under the exclusive care and custody of the United States Postal Service, first class mail, within the State of New York.

Gabriel S. De La Merced

Sworn to before me this
21st day of October 2010

/s/ Felix Q. Vinluan, Esq.
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission expires on 06-20-2013