UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CONCHITA UY,

                Plaintiff,

v.

THE MOUNT SINAI HOSPITAL (aka MOUNT
SINAI MEDICAL CENTER) and JEFF COHEN,

                Defendants.

---------------------------------------------------------------

10 Civ. 5674 (LAP)

MEMORANDUM & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/12

LORETTA A. PRESKA, Chief United States District Judge:

       Plaintiff Conchita Uy ("Plaintiff" or "Uy") brings this action against her former employer Mount Sinai Hospital ("Mount Sinai") and Jeff Cohen, Vice President of Labor Relations at Mount Sinai ("Cohen") (collectively "Defendants") under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-34, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.* Plaintiff claims that Defendants unlawfully discriminated against her on the basis of her age and terminated her in retaliation for engaging in protected activity. Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes Defendants' motion and cross-moves for summary judgment. For the reasons set forth below, Defendants' motion is GRANTED, Plaintiff's cross-motion is DENIED, and this action is hereby DISMISSED.

1

## BACKGROUND

Defendant Mount Sinai is a not-for-profit hospital in New York City, and Defendant Jeff Cohen is Vice President of Labor Relations at Mount Sinai. (Cohen Decl. ¶ 1.)[1] Plaintiff was formerly employed as a clinical laboratory technologist in the Hematology Department at Mount Sinai, where she performed various laboratory duties including examining specimens and ensuring that machines worked properly and were adequately stocked with chemicals and other supplies. (Def. R.56.1 Stmt. ¶¶ 1, 5.)[2]

Plaintiff was originally hired by Defendants in November, 2005. (*Id.* ¶ 1.) In 2008, Plaintiff was terminated twice by Defendants for reasons unrelated to this action. (*Id.* ¶ 7.) Specifically, Plaintiff was terminated in June, 2008, for failing to obtain a license to practice as a laboratory technologist in New York and in December, 2008, for failing to submit a doctor's note after a leave of absence as required by Mount Sinai policy. (*Id.* ¶¶ 8-9.) On both occasions, Plaintiff was reinstated by Mount Sinai after remedying each deficiency. (*Id.*)

In March 2009, Plaintiff filed two complaints by letter with Defendant Cohen, alleging that she had been discriminated against and harassed by her supervisors at Mount Sinai. (*Id.* ¶ 55.) In both of these letters, Plaintiff also stated that she had been terminated by her previous employer, North Shore-LIJ,[3] specifically in retaliation for her complaints about the presence of toxic chemical fumes in the laboratory in which she worked. (*Id.* ¶¶ 57-58.)

---

[1] "Cohen Decl." refers to the Reply Declaration of Defendant Jeff Cohen, dated September 28, 2011.
[2] "Defs. R.56.1 Stmt." refers to Defendants' Rule 56.1 statement of material facts not in dispute, dated July 22, 2011.
[3] "North Shore-LIJ," the North Shore-Long Island Jewish Health System, is a New York-based health care network that includes multiple hospitals, medical research institutes, nursing facilities, and various other medical-related facilities.

Thereafter, on April 1, 2009, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 63.) The EEOC notified Mount Sinai of the charges on May 22, 2009, and soon thereafter Mount Sinai's legal department prepared a position paper in response to the allegations. (*Id.* ¶ 64.) While reviewing the position paper and Plaintiff's employment materials in early June, Cohen discovered that Plaintiff had falsified her employment application when applying to work at Mount Sinai in late October, 2005. (*Id.* ¶ 65-68.) Specifically, Plaintiff had indicated on the application that she had left North Shore-LIJ, for "personal/business" reasons. (*Id.* ¶ 66.) Cohen noticed that this statement was inconsistent with Plaintiff's March, 2009 letters in which Plaintiff stated that she had been terminated by North Shore-LIJ (*Id.* ¶ 67.) After confirming with an official at North Shore-LIJ that Plaintiff did not leave for personal reasons but had in fact been terminated, Defendants terminated Plaintiff on June 22, 2009. (*Id.* ¶¶ 68, 71.)

Plaintiff filed the Complaint on July 26, 2010, which she amended on October 21, 2010. [dkt. nos. 1, 10.] Defendants moved for summary judgment on July 22, 2011. [dkt. nos. 23-27] Plaintiff opposed Defendants' motion and filed a cross-motion for summary judgment on September 28, 2011. [dkt. nos. 32-35.] Defendants replied on September 28, 2011. [dkt. nos. 39-40.] On April 13, 2012, the case was transferred to this Court. [dkt. no. 42.]

## DISCUSSION

### A. Legal Standard for Summary Judgment

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d

3

138, 148 (2d Cir. 2004). The role of the court on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986); *see, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Howley v. Town of Stratford,* 217 F.3d 141, 150–51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed.R.Civ.P. 56(c); *see, e.g., Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Koch v. Town of Brattleboro,* 287 F.3d 162, 165 (2d Cir. 2002). In making this judgment, the court must view the record in the light most favorable to the non-moving party. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 233, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 61 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. *See, e.g., Celotex,* 477 U.S. at 322–23, 325, 106 S.Ct. 2548; *PepsiCo, Inc. v. Coca–Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002); *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Giannullo v. City of New York,* 322 F.3d 139, 140–41 (2d Cir. 2003).

If the moving party carries his initial burden, the opposing party must then shoulder the

burden of demonstrating a genuine issue of material fact. *See, e.g., Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572 (2006); *Celotex*, 477 U.S. at 322; *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot "rely merely on allegations or denials" of the factual assertions of the movant, Fed.R.Civ.P. 56(e)(2); *see, e.g., Amaker v. Foley*, 274 F.3d 677, 680–81 (2d Cir.2001), nor can he rely on his pleadings or on merely conclusory factual allegations. *See, e.g., Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348; *see also Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. *See, e.g., Celotex*, 477 U.S. at 324; *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir.1994).

To demonstrate a "genuine dispute," the opposing party must come forward with sufficient evidence to permit a reasonable jury to return a verdict in his favor. *See, e.g., Anderson*, 477 U.S. at 242, 248, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001). Alternatively, if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983); *see also Rogath v. Siebenmann*, 129 F.3d 261, 267 (2d Cir.1997).

### B. **Plaintiff's Age Discrimination Claims**

Plaintiff claims that she was wrongfully terminated on the basis of her age in violation of the ADEA, NYSHRL, and NYCHRL. The ADEA makes it unlawful "to discharge any

5

individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Plaintiff's discrimination claims under the ADEA, NYSHRL, and NYCHRL are analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) (analyzing age discrimination claims under the NYSHRL and NYCHRL under the ADEA framework); *see Jenkins v. N.Y. State Banking Dep't*, Nos. 07 Civ. 6322 (JGK), 07 Civ. 11317 (JGK) 2010 WL 2382417, at *6 (S.D.N.Y. June 14, 2010) (applying the *McDonnell Douglas* framework to claims of age discrimination under the ADEA, NYSHRL, and NYCHRL).

Under this framework, a plaintiff must first demonstrate a *prima facie* case of discrimination. In order to do so, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was qualified for the position in question; (3) he or she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *see also Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

A plaintiff's burden at this stage is *de minimis*. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001). Nonetheless, in order to state a *prima facie* case of discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F.Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002), and cannot meet its burden through reliance on unsupported assertions or statements that are "devoid of any specifics, but replete with conclusions." *Griffin v. Ambika Corp.*, 103 F.Supp. 2d 297, 308

6

(S.D.N.Y. 2000) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

Once plaintiff establishes a *prima facie* case of discrimination by a preponderance of the evidence, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for the allegedly wrongful conduct. *McDonnell Douglas Corp.*, 411 U.S. at 802. If defendant makes this showing, the presumption of discrimination drops out and the burden shifts back to plaintiff to show that the reason provided by defendant is simply a pretext for discrimination. *Id.* at 804; see *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 380-81 (2d Cir. 2003).

Although the evidentiary burdens shift under this framework, the ultimate burden of persuasion that the defendant discriminated against the plaintiff remains at all times with the plaintiff. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). In determining whether the plaintiff has satisfied this burden, the Court must consider the evidence of discrimination in totality, and "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir. 2001).

Plaintiff tries to raise an inference of discrimination through conclusory allegations that she is qualified and licensed for her position as a clinical laboratory technologist and that the reasons Defendants offer for her termination are inadequate and pretextual. She has not, however, offered any evidence demonstrating a connection between her age and the adverse action taken against her, and the circumstances surrounding her termination do not permit an inference of discrimination. Assuming, however, for the sake of argument that Plaintiff has made a *prima facie* case of discrimination, Defendants have offered evidence of legitimate, non-discriminatory reasons for terminating her.

Mount Sinai sets forth company policies in its Employee Handbook ("the Handbook"), which all employees receive when they are hired. (Def. R.56.1 Stmt. ¶ 11.) Mount Sinai has a "zero-tolerance" policy prohibiting the falsification of all hospital records, including employment applications, which is contained in the Handbook and in Mount Sinai's Human Resources Policy. (*Id.* ¶¶ 16-19.) Falsification of records is a serious infraction that may result in immediate termination, and employees sign an affidavit upon completing their employment application that provides that any misleading or false statements are cause for dismissal. (*Id.* ¶¶ 20-21.) Pursuant to this policy, which Defendants say they "consistently and uniformly" enforce, 34 employees were terminated or refused employment between 2009 and July, 2011 because they falsified hospital records or employment applications (*Id.* ¶¶ 73-74.) Of these, 22 were under the age of 40 at the time of their termination. (*Id.* ¶ 75.) Defendants claim they terminated Plaintiff in accordance with this zero-tolerance policy, not because of her age.

Not to be deterred, Plaintiff then urges that this policy should not apply to her because her employment at Mount Sinai consisted of two separate employments with a gap in between. As such, by Plaintiff's logic, she cannot be fired from a later period of employment for falsifying an application for an earlier employment period, so when Defendants terminated her, they did so because of her age.

Conversely, Defendants claim that Plaintiff had one employment period lasting from November, 2005 to June, 2009 and that after each "discharge" she was "reinstated" rather than "rehired." (Def. Rep. at 7-8.)[4] Defendants assert that during her entire employment, November 8, 2005 was the critical date of hire for purposes of determining Plaintiff's seniority and benefits.

---

[4] "Def. Rep." refers to Defendants' Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, dated September 28, 2011.

8

(Cohen Decl. ¶ 5.) Plaintiff attempts to controvert Defendants' statements in hopes of establishing a genuine dispute by citing to portions of her deposition transcript, but these statements are conclusory and legally inadequate. (Pl. R.56.1 Stmt. ¶ 1; De La Merced Decl., Exs. 20-21 at 113-14, 142, 205-06.)[5,6] Plaintiff merely states that she was in fact terminated in June, 2008, and again in December, 2008, but fails to address Defendants' contention that as a matter of company policy and procedure, she was employed for one period rather than multiple distinct periods.

As such, Plaintiff has failed to raise a genuine dispute related to Defendants' legitimate, non-discriminatory reasons for terminating her and has failed to show that these reasons are merely a pretext for discrimination. Mount Sinai policy provides, and logic supports, that an employer can fire an employee for lying on a job application, regardless of when the falsification occurred. Plaintiff's vague and conclusory arguments to the contrary are without merit. *See Farias v. Instructional Sys. Inc.*, 259 F.3d 91, 99 (2d Cir. 2001) (where plaintiffs provided no evidence other than "conclusory statements unsupported by the record, to rebut the legitimate, non-discriminatory reasons offered by [defendant], let alone evidence that could reasonably support a verdict in their favor," summary judgment for defendant was appropriate); *see also Walder v. White Plains Bd. of Educ.*, 738 F.Supp. 2d 483, 493 (S.D.N.Y. 2010) ("[W]hen an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer").

---

[5] "Pl. R.56.1 Stmt." refers to Plaintiff's Rule 56.1 Counter Statement, dated August 25, 2011.
[6] "De La Merced Decl." refers to the August 25, 2011 declaration of Gabriel De La Merced. "Exs. 20-21" refers to the transcript from the February 15, 2011 deposition of Plaintiff Conchita Uy.

Defendants have demonstrated they had legitimate, non-discriminatory reasons for terminating Plaintiff, who has failed to provide evidence that these reasons are a pretext for age discrimination. It is clear, in light of the record, that Defendants terminated Plaintiff for lying on her job application, rather than because of her age. Accordingly, Plaintiff's claims that Defendants violated the ADEA, NYSHRL, and NYCHRL by terminating her are dismissed. Defendants' summary judgment motion on these claims is granted, and Plaintiff's cross-motion is denied.

### C. Plaintiff's Retaliation Claims

Plaintiff claims that she was wrongfully terminated in retaliation for engaging in protected activity in violation of the ADEA, NYSHRL, and NYCHRL. The ADEA's anti-retaliation provisions make it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such an individual . . . participated in any manner in an investigation, proceeding, or litigation under this [Act]." 29 U.S.C. § 623(d).

Retaliation claims under the ADEA are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), in which the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation. *See Gorzynski v. Jet Blue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010). Retaliation claims under the NYSHRL and NYCHRL are analyzed using the same burden-shifting analysis. *See Feingold v. New York,* 366 F.3d 138, 156 (2d Cir. 2004).

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate sufficient evidence to allow a trier of fact to find that 1) plaintiff engaged in protected activity; 2) the employer was aware of this activity; 3) the employer took adverse action against the plaintiff;

and 4) a causal connection exists between the protected activity and the adverse action. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). A plaintiff engages in protected activity if she has a "reasonable belief that [s]he was opposing an employment practice made unlawful by . . . the ADEA." *Kessler*, 461 F.3d at 210. At this stage, the burden is slight and may be met with *de minimus* evidence. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997).

A causal connection between the protected activity and the adverse action may be demonstrated by showing "(1) direct proof of retaliatory animus directed against the plaintiff; (2) disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *McNair v. N.Y.C. Health & Hosp. Co.*, 160 F.Supp.2d 601, 604 (S.D.N.Y. 2001) (citing *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Temporal proximity alone "between a plaintiff's protected activity and an adverse employment action is sufficient to create an inference of retaliation for purposes of proving a *prima facie* case." *Aka v. Jacob K. Javits Convention Ctr. of N.Y.*, No. 09 Civ. 8195 (FM), 2011 WL 4549610, at *9 (S.D.N.Y. Sept. 30, 2011) (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932-33 (2d Cir. 2010).

If the plaintiff makes out a *prima facie* case, the burden then shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its retaliatory action. *Gorzynski*, 596 F.3d at 106 (citing *McDonnell Douglas*, 411 U.S. at 802). Once the defendant does so, the plaintiff must show "that the defendant's proffered reason was a pretext for retaliation." *Spiegler v. Israel Discount Bank of N.Y.*, No. 01 Civ. 6364 (WK), 2003 WL 21488040, at *7 (S.D.N.Y. June 25, 2003).

Plaintiff claims she was terminated in retaliation for filing internal complaints against her supervisor and filing a charge of discrimination with the EEOC. Plaintiff did engage in protected activity, and the adverse employment action about which she complains is her June, 2009 termination. There is no basis, however, for concluding that Plaintiff's termination was causally connected to the complaints or EEOC charge.

As discussed above, Defendants terminated Plaintiff in accordance with their policy prohibiting falsification of hospital records, including employment applications, which they enforced on 34 occasions between 2009 and mid-2011. (Def. R.56.1 Stmt. ¶¶ 16-20, 31.) Nonetheless, Plaintiff claims that a causal connection can be inferred by the fact that she was terminated very soon after she filed the charge with the EEOC. Plaintiff is correct that adverse action following protected activity closely in time can help to establish a *prima facie* case of retaliation. *See, e.g., Nagle v. Marron,* 663 F.3d 100, 111 (2d Cir. 2011) (choosing not to draw a "bright line" for a time period giving rise to an inference of causation, but finding that six weeks can establish such an inference); *see also Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,* 444 F.3d 158, 168 (2d Cir. 2006) (time periods of three weeks and three months are not too long to draw an inference of retaliation).

Defendants learned on May 22, 2009 that Plaintiff had filed a charge with the EEOC and then fired her one month later. Without more, this would appear to raise an inference of retaliation. But even where temporal proximity might otherwise raise such an inference, an intervening event between the protected activity and the adverse employment action generally defeats such an inference. *See, e.g., Gubitosi v. Kapica,* 154 F.3d 30, 33 (2d Cir. 1998); *Yarde v. Good Samaritan Hosp.*, 360 F.Supp. 2d 552, 562 (S.D.N.Y. 2005). As discussed above, Defendants were unaware that Plaintiff had falsified her employment application until after she

12

had filed the EEOC charge. The intervening event of Defendants' learning of this falsification negates any inference that could otherwise be drawn from the temporal proximity between the EEOC charge and termination.

Plaintiff has shown no evidence suggesting that the legitimate reasons Defendants provided for her termination are pretextual. As such, no reasonable jury could conclude that Plaintiff was terminated in retaliation for engaging in protected activity. Accordingly, Plaintiff's claims that Defendants retaliated against her in violation of the ADEA, NYSHRL, and NYCHRL are dismissed. Defendants' motion for summary judgment is granted on these claims, and Plaintiff's cross-motion is denied.

### D. <u>Plaintiff's Hostile Work Environment Claim</u>

Plaintiff's amended complaint appears to assert a hostile work environment claim, but she has failed to address this claim in her opposition to summary judgment and cross-motion for summary judgment. Accordingly, Plaintiff has abandoned this claim, and it is hereby dismissed. *See, e.g., Lipton v. Cnty. of Orange,* 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) (declaring claim abandoned where plaintiff failed to respond to defendant's arguments for dismissing the claim); *see also Bonilla v. Smithfield Assocs. LLC,* No. 09 Civ. 1549 (DC), 2009 WL 4457304 at *4 (S.D.N.Y. Dec. 4, 2009) (plaintiff's claims dismissed as abandoned because plaintiff failed to address them in opposition to defendant's motion to dismiss).

Even if the claims are not deemed abandoned, however, the record does not support a hostile environment claim. A hostile work environment exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993) (internal quotation marks and

citations omitted). A plaintiff seeking to survive summary judgment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of [the] working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). Whether an environment is abusive is determined by looking at the totality of the circumstances, including "the frequency of the [retaliatory] conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Under the circumstances reflected in this record, a reasonable jury could not find that the harassment and discrimination Plaintiff allegedly experienced was sufficiently severe or pervasive to support such a claim. Accordingly, Plaintiff's hostile work environment claim, even if not deemed abandoned, is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [dkt. nos. 23-27] is GRANTED. Plaintiff's cross-motion for summary judgment [dkt. nos. 32-35] is DENIED, and this case is hereby DISMISSED.

The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated:   New York, New York
         September 30, 2012

*Loretta A. Preska*
LORETTA A. PRESKA, Chief U.S.D.J.